**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION**

**SCOTT HAMMOND**                                                              **PLAINTIFF**

**V.**                                      **CASE NO. 3:20-CV-03024**

**NEUBACH VANDERMAST**                                               **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiff Scott Hammond filed his complaint in this action on March 18, 2020, and

Defendant Neubach Vandermast answered.  No motions were filed, and the Court set a

Rule 16 Case Management Hearing for May 29, 2020.  After reviewing the pleadings and

the parties' joint Rule 26(f) report, the Court *sua sponte* directed the parties to file

simultaneous briefing on the issue of whether the Court should abstain from hearing this

action pursuant to the abstention doctrine set forth in *Colorado River Water Conservation*

*District v. United States*, 424 U.S. 800 (1976).  Mr. Hammond and Neubach[1] both filed

the requested briefing (Docs. 12 & 13) and both parties filed responses (Docs. 14 & 15).

The matter is now ripe for the Court's consideration.  For the following reasons, the Court

finds that the *Colorado River* abstention doctrine applies, and the Court **STAYS** this

action.

## I.  BACKGROUND

The Plaintiff in this action, Mr. Hammond, was an employee of Ark-Plas Products,

Inc. ("Ark-Plas").  The Defendant in this action, Neubach, is the owner and president of

---

[1] To avoid confusion, the Court will refer to Neubach Vandermast and Nick Vandermast
by their first names.

Ark-Plas. Nick Vandermast—a non-party to this action—is Neubach's son and was plant manager at Ark-Plas.

On March 31, 2017, Mr. Hammond filed a complaint in the Circuit Court of Marion County, Arkansas, against Ark-Plas, Neubach, and Nick. *Scott Hammond v. Ark-Plas Products Inc., et al.*, 45CV-17-22 (Ark. Cir. Ct.). In that complaint, Mr. Hammond alleges claims of discrimination and retaliation under the Americans with Disabilities Act ("ADA"), retaliation, interference, and discrimination under the Family Medical Leave Act ("FMLA"), and retaliation under the Arkansas Civil Rights Act ("ACRA"). According to that complaint, Mr. Hammond's son's medical conditions required Mr. Hammond to take intermittent medical leave, which was granted, but he was subsequently reassigned to different job duties and ultimately fired in February 2016. Mr. Hammond alleges that his reassignment and firing were in retaliation for his exercise of his FMLA rights. The defendants deny Mr. Hammond's claims. Motion practice proceeded in that case, culminating in cross-motions for summary judgment, both of which are still pending. On February 21, 2020, Mr. Hammond moved to dismiss without prejudice Neubach, and on the same day, that motion was granted.

Then, on March 17, 2020, Mr. Hammond filed his Complaint in this action (Doc. 2). In it, he alleges one claim of FMLA retaliation[2] against Neubach. *Id.* at p. 2. Specifically, Mr. Hammond alleges that, during the 2015–2016 year, he requested and received FMLA leave to care for his son, and then when he returned to work Neubach reassigned him to a job that had a lower pay range. Further, Mr. Hammond alleges that his new job was

---

[2] The Court does not construe an FMLA entitlement or discrimination claim from the facts set forth in the Complaint; however, even if such claims were stated, the Court's conclusion regarding abstention would be unchaged.

2

more difficult and painful because of a congenital defect to his hand.  According to Mr. Hammond, other employees who were junior to him and had less training were assigned to positions that had higher pay ranges.  He asserts that, ultimately, Neubach fired him in retaliation for complaining that his rights under the FMLA had been violated.  No one else is named as a defendant.

At the May 29, 2020, Case Management Hearing, the Court *sua sponte* raised the question of whether it should abstain under the *Colorado River* abstention doctrine due to the parallel ongoing litigation before the state court.  The Court ordered the parties to file briefing on the issue of abstention, and they have done so.

## II.  LEGAL STANDARD

The Supreme Court has emphasized that "federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 15 (1983) (quoting *Colo. River*, 424 U.S. at 817).  The general rule provides that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colo. River*, 424 U.S. at 817 (internal quotation marks omitted).  Nonetheless, in certain exceptional circumstances, federal courts may dismiss a federal suit because of the presence of a concurrent state proceeding for reasons of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* (internal quotation marks omitted).  These exceptional circumstances allowing a federal court to dismiss its suit because of a concurrent state proceeding "are considerably more limited than the circumstances appropriate for [other forms]

3

of abstention." *Id.* at 818.    Thus, "only the clearest of justifications will warrant
dismissal." *Id.* at 819.

## III. DISCUSSION

### A. Parallel State And Federal Court Proceedings

As a threshold matter, for *Colorado River* abstention to apply, "there must be
pending parallel state and federal court proceedings." *Fru–Con Const. Corp. v.
Controlled Air, Inc.*, 574 F.3d 527, 535 (8th Cir. 2009).   In the Eighth Circuit, "[t]he
pendency of a state claim based on the same general facts or subject matter as a federal
claim and involving the same parties is not alone sufficient" for parallelism. *Id.* Instead,
"substantial similarity [must] exist[ ] between the state and federal proceedings, which
similarity occurs when there is a substantial likelihood that the state proceeding will fully
dispose of the claims presented in the federal court." *Fru–Con Const. Corp.*, 574 F.3d at
535 (emphasis in original) (citing *TruServ Corp. v. Fiegles, Inc.*, 419 F.3d 584, 592 (7th
Cir. 2005)).   Furthermore, "[t]his analysis focuses on matters as they currently exist, not
as they could be modified," and "jurisdiction must be exercised if there is any doubt as to
the parallel nature of the state and federal proceedings." *Id.*  (citing *Baskin v. Bath Twp.
Bd. Of Zoning Appeals*, 15 F.3d 569, 572 (6th Cir. 1994); *AAR Int'l, Inc. v. Nimelias Enter.
S.A.*, 250 F.3d 510, 520 (7th Cir. 2001)).   In deciding whether a concurrent state-court
proceeding will fully dispose of federal court claims, courts compare the issues in the
federal action to the issues the parties have initiated or litigated in the state
court. *See TruServ Corp.*, 419 F.3d at 592; *AAR Int'l, Inc.*, 250 F.3d at 520; *Baskin*, 15
F.3d at 572; *THI of N.M. at Hobbs Ctr., LLC v. Patton*, 851 F. Supp. 2d 1281, 1288–89
(D.N.M. Oct. 31, 2011).

4

First, the Court disagrees with Mr. Hammond's contention that the state and federal proceedings are not parallel because the parties are not identical. The Eighth Circuit Court of Appeals has never explicitly held that proceedings are parallel for purposes of *Colorado River* abstention only if the parties in the state and federal proceedings are identical. Indeed, "the parties and issues in *Colorado River* itself were not identical to the 'parallel' state-court proceedings . . . ." *Chase Brexton Health Serv., Inc. v. Maryland*, 411 F.3d 457, 464 (4th Cir. 2005). Other circuit courts have rejected the argument that proceedings are not parallel unless the parties are identical. *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Worker's Comp.*, 851 F.3d 507, 520 (5th Cir. 2017) (noting that the identity of the parties is not determinative of parallelism) (citation omitted); *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1019 (7th Cir. 2014) (same). Further, district courts in the Eighth Circuit have held that identical parties are not necessary to show parallelism between state and federal proceedings. *Samuels Grp., Inc. v. Hatch Grading & Contracting, Inc.*, 697 F. Supp. 2d 1042, 1049 (N.D. Iowa 2010) (reviewing cases and holding "that proceedings may be 'parallel' for purposes of *Colorado River* abstention even when the parties to the state and federal proceedings are not completely identical"). Instead, courts look to whether the parties have nearly identical interests. *Freed*, 756 F.3d at 1019 ("One way that parties in separate actions are considered substantially the same under the *Colorado River* doctrine is when they have nearly identical interests." (internal quotation marks omitted)); *Ritchie Capital Mgmt., L.L.C. v. Jeffries*, 849 F. Supp. 2d 881, 889 (D. Minn. 2012) ("Litigation involving non-identical parties may be duplicative where the interests of the non-identical parties are aligned or related"); *Pace Const. Co., Inc. v. Travelers Cas. & Surety Co. of Am.*, 259 F.

5

Supp. 2d 934, 937 (E.D. Mo. 2003) ("[T]he concurrent proceedings are parallel because

. . . the parties' interests in each case are clearly aligned and the issues, though not

identical, are substantially similar.").

From the face of Mr. Hammond's federal and state complaints, it appears that the

same facts undergird his FMLA retaliation claims in both courts; namely, he alleges that,

because he asserted his rights under the FMLA, he was reassigned to a less favorable

position and ultimately fired.   His state-court complaint, which originally named both

Neubach and Nick, does not contain separate factual allegations for either party.   The

FMLA retaliation claims in both complaints contain identical elements,[3] and in the

absence of direct evidence, such claims are assessed under the familiar burden-shifting

framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1983).   These claims,

even though they are directed at different parties, raise substantially similar—if not

identical—issues of law and fact.   For example, if direct evidence is missing, both actions

will require the fact-finder to determine if there was a legitimate, non-retaliatory reason

for Mr. Hammond's firing and whether the proffered reasons for those adverse

employment actions are pretextual.   While the defendants are not identical in the two

cases, their interests are nearly identical:   they are the owner and plant manager of the

same company, and their defense will require them to show that there was a legitimate

---

[3]  Mr. Hammond must prove the following elements to prevail on his FMLA retaliation
claims:  1) Mr. Hammond must have been eligible for leave; (2) Mr. Hammond's son must
have had a serious health condition; (3) Mr. Hammond must have been needed to care
for his son; (4) Mr. Hammond must have been absent from work to care for his son; (5)
Mr. Hammond must have given his employer timely notice of his need to be absent from
work; (6) defendants imposed an adverse employment action; and (7) Mr. Hammond's
absence from work or complaints about his reassignment must have been a motivating
factor in a defendant's decision to impose the adverse employment action.

6

non-discriminatory reason for Mr. Hammond's termination and that such termination was not pretextual.

Indeed, after reviewing the pleadings and motions filed in the state court, it appears that the only potential factual difference between the claims against Neubach and Nick is whether they were both decision-makers who had the requisite intent to retaliate against Mr. Hammond. *See Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 867 (8th Cir. 2006) (noting that, to prove causation, plaintiffs must show that a supervisor's retaliatory motive played a part in the adverse employment action). On this point, Neubach and Nick admit in a response to an interrogatory that they were both involved in the decision to terminate Mr. Hammond. *Scott Hammond v. Ark-Plas Products Inc., et al.*, 45CV-17-22, Ex. 10, filed Sept. 6, 2019 (Ark. Cir. Ct.). Given this admission, it appears that Mr. Hammond's claims of FMLA retaliation against Neubach and Nick will rise or fall together.[4]

Moreover, both the state and federal suits request compensatory and liquidated damages as well as reasonable attorneys' fees and costs. If Mr. Hammond recovers compensatory damages through the state proceeding for his FMLA retaliation claim against Ark-Plas and Nick, he may not be entitled to any further compensatory damages against Neubach. *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1022 (8th Cir. 2008) ("[The plaintiff] is only entitled to one compensatory damage award if liability is found on any or all of the theories asserted [on the same injury]."). Again, this

---

[4] Even if there is a factual dispute about whether Neubach was involved in the decision to terminate Mr. Hammond, a resolution of the FMLA retaliation claim against Nick is still substantially likely to resolve the vast majority of the issues underlying the claim against Neubach, including Mr. Hammond's eligibility for FMLA leave, whether Mr. Hammond's son had a qualifying medical condition, whether Mr. Hammond's absence was necessary to care for his son, and whether Mr. Hammond's reassignment and termination were motivated by his exercise of his FMLA rights.

is the case because the factual bases for the claims against Ark-Plas, Nick, and Neubach all appear to be the same.

Mr. Hammond argues that the state court's decisions will not necessarily have preclusive effect on the claims in federal court and therefore the cases are not parallel. This argument misses the mark. The issue is not whether the state court's rulings will *necessarily* decide the claims before this Court; instead, the question is whether there is a "substantial likelihood" that the resolution of the state action will resolve the issues before this Court. *See Fru–Con Const. Corp.*, 574 F.3d at 535. Arkansas's doctrine of collateral estoppel "bars relitigation of issues of law or fact previously litigated, provided that the party against whom the early decision is being asserted had a full and fair opportunity to litigate the issue in question and that the issue was essential to the judgment." *See Hardy v. Hardy*, 380 S.W.3d 354, 358 (Ark. 2011) (citing *Morgan v. Turner*, 368 S.W.3d 888, 895 (Ark. 2010)). Thus, any ruling adverse to Mr. Hammond in the state-court action could potentially have preclusive effect in this litigation. Thus, there is at least a "substantial likelihood" that final resolution of the state action will have preclusive effect on this Court.

In sum, when considering abstention, the Court's duty is to compare the state and federal proceedings as they currently exist. As these proceedings exist, Mr. Hammond is plaintiff in both actions, and his FMLA claims against Neubach, Nick, and Ark-Plas are based upon nearly identical facts and raise identical issues of law. Based upon these findings and applying the standard set forth in *Colorado River*, *Moses H. Cone*, and *Fru–Con Construction Corporation,* the Court concludes that the concurrent federal and state proceedings are parallel.

## B. Exceptional Circumstances

When the federal and state proceedings are parallel, *Colorado River* and *Moses H. Cone* instruct a district court to consider six non-exhaustive factors for determining whether "exceptional circumstances warrant abstention." *Fru–Con Const. Corp.,* 574 F.3d at 534; *see also Mountain Pure, LLC v. Turner Holdings, LLC,* 439 F.3d 920, 926 (8th Cir. 2006). These factors include:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Fru–Con Const. Corp.,* 574 F.3d at 534 (quoting *Mountain Pure, LLC,* 439 F.3d at 926). Courts must "pragmatically apply [these factors] to advance the 'clear federal policy' of avoiding piecemeal adjudication." *Mountain Pure, LLC,* 439 F.3d at 926 (quoting *Moses H. Cone,* 460 U.S. at 16, 21). Nevertheless, the balance should be "weighted in favor of the exercise of jurisdiction." *Moses H. Cone,* 460 U.S. at 16. A court's task in applying these factors "is not to find some substantial reason for the exercise of federal jurisdiction," but rather "to ascertain whether there exist 'exceptional' circumstances . . . to justify the *surrender* of that jurisdiction." *Id.* at 25–26 (emphasis in original).

The first two factors are of little consequence to this discussion. There is no *res* at issue in this litigation, and there is no appreciable difference in the level of inconvenience between the two fora. Thus, these two factors do not weigh for or against abstention.

9

The third factor, the risk of piecemeal litigation, weighs heavily in favor of abstention and, as the Supreme Court cases make clear, it is the predominant factor. *See Moses H. Cone*, 460 U.S. at 16, 21. "'[P]iecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results.'" *Nabholz Cons. Corp. v. Beck*, 699 F. Supp. 2d 1101, 1107 (E.D. Mo. 2010) (quoting *LaDuke v. Burlington N.R. Co.*, 879 F.2d 1556, 1560 (7th Cir. 1989)). Here, Mr. Hammond is plaintiff in concurrent state and federal actions in which he alleges an FMLA retaliation claim based upon his job reassignment and eventual termination. While his claims in the proceedings are directed at different individuals—Ark-Plas and Nick in the state action, Neubach in the federal action—the factual bases of these claims appear to be identical. The court's decision on the pending motions for summary judgment in the state action likely will resolve the same legal issues surrounding Mr. Hammond's claims in this Court, which creates the possibility for diverging rulings between this Court and the state court. Such divergences would result in piecemeal litigation and waste judicial resources, which the state court has already expended to resolve these issues. Thus, the third factor weighs in favor of abstention. Even if the courts ultimately concur, it would be the definition of "piecemeal litigation" for both courts to consider the same issues when the parties and issues are not meaningfully distinct.

The fourth factor, which case has priority, also favors abstention. The Supreme Court has held that the priority of cases "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. Mr. Hammond's state-court action not only began before these federal proceedings but has also progressed for over three years

longer than the federal action. Further, dispositive motions for summary judgment are pending in the state court action, while discovery has not yet commenced here. Clearly, the state court has made greater progress towards resolving the merits of Mr. Hammond's FMLA claim. Accordingly, this factor weighs in favor of abstention.

The fifth factor weighs against abstention because federal law controls Mr. Hammond's FMLA claims. *See Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 879 (8th Cir. 2002) (citing *Moses H. Cone*, 460 U.S. at 26).

The sixth factor, which considers whether the state forum is adequate to protect the federal plaintiff's rights, does not weigh for or against abstention. This factor "counts for or against abstention and dismissal only where one of the forums is *inadequate* to protect a party's rights." *Fru-Con Const. Corp.*, 574 F.3d at 539 (emphasis in original) (internal quotation marks omitted). Neither party argues that the state court is incapable of adequately protecting Mr. Hammond's rights, nor would such an argument be convincing, since Mr. Hammond originally brought his FMLA claim against Neubach in state court. And while it is true that Mr. Hammond's state-court action has been delayed due to the COVID-19 pandemic, this is the case for many courts across the country and does not mean that the state court is inadequate to resolve his claims. Thus, this reason does not favor either forum.

Finally, the Eighth Circuit has noted that it is appropriate to consider whether forum shopping has occurred when applying the *Colorado River* "exceptional circumstances" factors. *See Federated Rural Elec. Inc. Corp. v. Ark. Elec. Coop.*, 48 F.3d 294, 299 (8th Cir. 1995). The question is "whether the federal or state suit is filed . . . for vexatious, reactive or tactical reason." *Id.* At the Case Management Hearing, counsel for Mr.

11

Hammond acknowledged that the claims against Neubach were dismissed and refiled in federal court in order to speed along the litigation process. While the Court does not believe this to be "vexatious," Mr. Hammond assuredly filed this federal action for tactical reasons.

In sum, three of the relevant factors do not weigh for or against abstention, three weigh in favor of abstention, and one militates against abstention. When considering all of the factors, including the overwhelming risk of piecemeal litigation and the presence of forum shopping, the Court finds that the overall balance weighs in favor of abstention. Considering that Mr. Hammond is the plaintiff in both actions; that his FMLA retaliation claims are based upon what appear to be identical facts; and that the state proceedings have progressed for over three years, the Court finds that this case poses substantial risks of piecemeal litigation, inconsistent rulings by federal and state courts, and an extensive waste of judicial resources. Therefore, this case presents exceptional circumstances warranting abstention.

Nonetheless, the Court does not dismiss this action; instead, the Court stays this proceeding and retains jurisdiction, pending the resolution of the concurrent state-court action. *See Cigna HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849 (7th Cir. 2002) ("[A] stay permits the federal court to retain jurisdiction in case the state-court action does not meet its anticipated end. A stay had the additional advantage of bringing the case back before the same federal judge if a determination is needed as to the preclusive effects of the state judgment or decisions." (internal quotation marks omitted)).

## IV. CONCLUSION

For the foregoing reasons, on its own motion, the Court will **STAY** this action according to *Colorado River* abstention until resolution of the pending state-court action in *Scott Hammond v. Ark-Plas Products Inc., et al.*, 45CV-17-22 (Ark. Cir. Ct.), and any associated appeals. The Clerk of Court is directed to **ADMINISTRATIVELY TERMINATE** the case, and the parties may file a motion to lift the stay and reopen the case when the state court matter is resolved. Additionally, the parties are **DIRECTED** to file a joint report, of not more than one page, updating the Court as to the status of the state court case. Such report should be filed within 30 days of a final judgment in the state-court action.

**IT IS SO ORDERED** on this ___ day of August, 2020.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE